Allen NADLER and Edward Cappetta, Plaintiffs–Counter–Defendants– Appellants–Cross–Appellees,

v.

F & D ASSOCIATES, INC., a Corporation of the State of New York, Defendant–Counter–Claimant–Appellee– Cross–Appellant.

No. 02–9260, 02–9230.

United States Court of Appeals, Second Circuit.

Aug. 22, 2003.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED that the judgment of the district court be AFFIRMED.

Ronald J. Wronko, Montclair, New Jersey (McKenna, Mulcahy & McKenna, LLP, Montclair, New Jersey, on the brief), for Appellant.

John D. D'Ercole, Robinson, Brog, Leinwand, Greene, Genovese & Gluck, P.C., New York, New York, for Appellee.

PRESENT: JACOBS, F.I. PARKER,[1] and SOTOMAYOR, Circuit Judges.

1. The Honorable Fred I. Parker, who was a member of the panel, died after oral argument, and the appeal is being decided by the

## SUMMARY ORDER

Plaintiffs Allen Nadler and Edward Cappetta sued defendant F & D Associates, Inc. ("F & D") in the United States District Court for the Eastern District of New York, alleging principally that F & D sold their furniture in violation of New York's warehouseman's lien statute. *See* N.Y. U.C.C. § 7–210 (McKinney 2002). F & D counter-claimed for storage fees incurred in connection with plaintiffs' furniture. The district court (Pollak, *M.J.*) entered judgment in favor of F & D on October 2, 2002 after a bench trial. On the storage fees cross-claim, the district court denied F & D storage fees for the period prior to the auction, but awarded storage fees for some furniture remaining in the warehouse after the auction.

On appeal, plaintiffs argue that the district court erred in finding that (1) F & D gave adequate notice to Cappetta or Nadler prior to its auction, (2) the auction was commercially reasonable, (3) plaintiffs failed to prove damages, and (4) F & D was entitled to storage fees incurred after the auction. F & D cross-appeals, arguing that the district court erred in finding that F & D was not entitled to storage fees incurred prior to the auction.

"On appeal from a bench trial, the district court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo.*" *Mobil Shipping & Transp. Co. v. Wonsild Liquid Carriers, Ltd.*, 190 F.3d 64, 67 (2d Cir.1999). "[A] finding is clearly erroneous only if ... the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 67–68 (internal quotation marks omitted); *see also S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 239 (2d Cir.2001) (noting that this is a "highly deferential standard of review" for "findings entered

after a bench trial"); *LoPresti v. Terwilliger*, 126 F.3d 34, 39 (2d Cir.1997) (same).

We agree with the district court that plaintiffs have failed to meet their burden to demonstrate damages with the requisite specificity to recover under § 7–210. Plaintiffs' claim under § 7–210 therefore fails. Although the sufficiency of notice as to Nadler (but not as to Cappetta) may raise troubling questions, we do not reach plaintiffs' notice arguments. Nor do we reach their argument concerning the commercial reasonableness of the auction.

 "The warehouseman is liable for damages caused by failure to comply with the requirements for sale under this section and in case of willful violation is liable for conversion." N.Y. U.C.C. § 7–210(9) (McKinney 2002). In *Henderson v. Holley*, 112 A.D.2d 190, 491 N.Y.S.2d 414 (2d Dep't 1985), the appellate division of the New York Supreme Court reversed a judgment in favor of the plaintiffs-bailors for lack of sufficient evidence of damages:

> It was incumbent upon plaintiffs to prove their damages, through the testimony of an expert or by any other relevant means by which the value of the furniture at the time of its conversion could be determined.... [P]laintiffs failed to adduce any probative evidence with respect to the deterioration, if any, in the condition of the furniture from the time it was obtained to the time of conversion. Since the plaintiffs failed to sustain their burden of proof of producing sufficient evidence to form a basis for an estimate of damages with some degree of exactness, the judgment must be reversed and the complaint dismissed.

*Id.* at 415 (citations and internal quotation marks omitted); *accord Ellison v. Midtown Moving & Storage, Inc.*, 188 Misc.2d

remaining two members of the panel who are in agreement. *See* Local Rule 0.14(b).

**500**

703, 729 N.Y.S.2d 565, 566 (1st Dep't 2001) (noting, in the alternative, that the court would vacate a damage award in favor of plaintiff-bailor under § 7–210 "since plaintiff presented no competent proof of the value of the goods at the time of their claimed conversion").

Concerning damages for the auctioned furniture, plaintiffs relied at oral argument on the prices placed on the furniture prior to the auction by defendant to establish market value, and the record contains no other testimony addressing the value of the auctioned furniture. Following the New York courts, we hold that the plaintiffs, insofar as they relied solely on the defendant's preauction estimation of the value of plaintiff's furniture, without any further testimony as to how those prices were derived, "failed to sustain their burden of proof of producing sufficient evidence to form a basis for an estimate of damages with some degree of exactness." *Henderson,* 491 N.Y.S.2d at 415.

■ Concerning damages in conversion, presuming plaintiffs could make out a case of a willful violation, we agree with the district court that plaintiffs can demonstrate with the requisite specificity neither the furniture allegedly converted nor its actual market price. As the district court observed in detail, the evidence demonstrates that none of the parties maintained accurate records of the furniture shipped to F & D, the furniture shipped out from F & D, the precise amount of storage space occupied by the furniture while at F & D, or (most importantly) the value of the furniture at the time of sale.

■ Addressing the counter-claim, the district court ruled that F & D "failed to establish its right to recover storage fees for the period of time prior to" the auction, because "it is unclear whether Mr. Cappetta ever received the fourth page of [F & D's price list,] which contains [the storage fee provision] in a footnote," and because

F & D failed "to sustain its burden of proving that storage fees were in fact part of the contract between the parties." (Memorandum Op. & Order, dated Sept. 17, 2002, at 27–28.) Although a witness testified on behalf of F & D that he gave the four-page contract to Cappetta, the district court did not commit clear error in interpreting the witness's subsequent testimony concerning changes and differences in the final page of the form to make Cappetta's receipt of the storage-fee term unclear.

■ F & D argues that the letters it sent to Cappetta demanding payment, on their own, demonstrate that the parties entered into an agreement for payment of storage fees. We disagree, especially since there is no evidence Cappetta actually received those letters. F & D argues that the letters constitute an "account stated," and that an account stated may be implied if the party receiving a statement of account keeps it without objecting within a reasonable time. (Appellee's Br. at 37–38 (citing *Chisholm–Ryder Co. v. Sommer & Sommer,* 70 A.D.2d 429, 421 N.Y.S.2d 455, 457 (4th Dep't 1979)).) However, "an account stated cannot be made the instrument to create liability when none exists." *Gurney, Becker & Bourne, Inc. v. Benderson Dev. Co.,* 47 N.Y.2d 995, 420 N.Y.S.2d 212, 213, 394 N.E.2d 282 (1979) (holding that trial court erred in submitting case to jury on account stated theory where "defendant had not expressly agreed to treat [renewal commission] letter as an account stated with respect to the commission contingent upon renewal").

■ We also reject F & D's argument that, since plaintiffs did not challenge the validity or amount of its lien under § 7–211, they cannot now raise such a challenge. The New York State legislature added Section 7–211 to the warehouse-

man's lien law as a procedural safeguard after the New York courts held the statute unconstitutional to the extent that it authorized *ex parte* sale of bailed goods without affording an opportunity for a hearing. *See Ellison,* 729 N.Y.S.2d at 566. Section 7–211 provides that "a person claiming an interest in the goods *may* commence a special proceeding to determine the validity of the lien." N.Y. U.C.C. § 7–211 (McKinney 2002) (emphasis added). Nothing in its language prevents a person from resisting a subsequent claim for storage fees that is not based on the warehouseman's lien statute.

■ The district court did award F & D reasonable storage fees, however, "for the period [after the auction and] after Cappetta returned to New York to conduct an inventory of the furniture in July 1999." (Order, at 28.) After Cappetta's post-auction discussion with F & D and after F & D invited Cappetta to remove his remaining furniture, the district court found that "Cappetta was certainly put on notice that F & D would be charging storage fees for storing that remaining furniture." (Order, at 14–16, 28.) This finding is not clearly erroneous.

\* \* \* \* \* \*

For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.